**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHIRLEY Z. LEE**, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **1:05-CV-717-A** |
| | § | |
| **COMPASS BANK,** | § | |
| | § | |
| **Defendant.** | § | |

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Compass Bank ("Compass") submits its brief in support of its motion for summary judgment as follows:

### Introduction

Between December 2005 and January 2005, three Compass Tellers, including Plaintiff Shirley Lee, were discharged for failing to follow well-established check cashing procedures that caused a loss to Compass. Lee alleges, however, that her employment was terminated because she is Asian and a minority. In this case, there is no evidence that Lee was discriminated because she is Asian or a minority. The other two Tellers who were discharged are white. Thus, Lee's alleged minority status was not a factor in her termination from employment.

Lee further claims that she was discriminatorily denied promotions to the Financial Sales Representative position on three occasions. Her promotion claims are barred by the applicable statutes of limitations. In addition, like her termination claim, there is no evidence that Lee was denied the promotions because she is Asian.

Finally, Lee alleges discriminatory discipline. None of the disciplinary actions (warnings and counselings) constitute an "adverse action" sufficient to support a claim.

Again, there is no evidence that Lee's race was a factor in any of Compass' actions. Accordingly, none of Lee's claims can survive summary judgment.

## Statement of Undisputed Facts

For purposes of summary judgment, the following facts are undisputed:

### Lee is Hired by Regina McNeil and Jerri Carothers

In April 2001, Regina McNeil (Banking Center Manager) and Jerri Carothers (Customer Service Manager) interviewed and hired Lee as a Teller in Compass' Dothan Main branch.  [Lee depo. p. 19, lines 18-23, p. 20, lines 1-10; McNeil decl. ¶ 2]. Carothers was Lee's direct supervisor.  [Lee depo. p. 20, lines 11-14].  After her first year of employment, Carothers promoted Lee to the Senior Teller position.  [Lee depo. p. 39, lines 17-23, p. 40, lines 1-2].

### Lee Becomes U.S. Citizen and Carothers Throws Her a Party

Lee's national origin is Chinese.  [Complaint, III. Parties].  Lee became a United States citizen in 2002 during her employment with Compass.  [Lee depo. p. 174, lines 13-19].  As a result, Carothers organized a party at the Dothan Main branch in honor of Lee's new U.S. citizenship. [Lee depo. p. 174, lines 20-23, p. 175, lines 1-13].

### Lee's Warnings and Counselings

During her employment as a Teller, Lee received some written warnings and was counseled regarding her attendance.  On November 5, 2002, Lee received an "Attendance – Written Warning" after receiving a verbal counseling regarding her attendance on September 19, 2002. [Lee depo. p. 54, lines 10-23, p. 55, lines 1-4; DX 10].  On January 27, 2003, Lee received a "Probationary Warning" for poor attendance.  [Lee depo. p. 78, lines 7-17; DX 14].  On July 21, 2003, November 21, 2003, and March 2, 2004, Lee received "Written Counseling[s]" for poor attendance. [Lee depo. p. 82, lines 7-16, p. 83,

lines 12-20, p. 84, lines 19-23, p. 85, lines 1-5; DX 15, 16, 17]. Lee testified in her deposition that she was absent or late as reflected in the attendance warnings.[1] [Lee depo. p. 55, lines 5-22, p. 79, lines 2-18].

On April 2, 2004, Carothers conducted a meeting with the Tellers at the Dothan Main branch regarding customer service. Carothers specifically instructed Tellers not to take personal phone calls while waiting on customers. [McNeil decl. ¶ 6]. Later that same day, Regina McNeil observed Lee attempting to wait on a customer while taking a personal phone call. As a result, Carothers and McNeil counseled Lee regarding her conduct.[2] [McNeil decl. ¶ 6].

Despite these warnings and counseling sessions, at this time, Lee's employment was not terminated and she did not suffer any loss of income, title, or other tangible job benefit. [McNeil decl. ¶ 3].

### Compass Allows Lee to Withdraw Her Resignation

In April 2004, Lee provided Compass with a letter of resignation.[3] During her deposition, Lee testified that she wrote the letter in part due to her belief that she had been treated unfairly with respect to being counseled about customer service, as

---

[1]    In addition, Compass received customer complaints relating to Lee's performance. One customer alleged that Lee had failed to timely wait on the customer because the customer was African-American and was dressed poorly. Another customer alleged that Lee was rude while waiting on him. [Lee depo. p. 57, lines 6-21, p. 75; lines 2-17, DX 11, 13; [McNeil decl. ¶ 5]. No discipline was issued to Lee as a result of these complaints from customers. [McNeil decl. ¶¶ 4-5].

[2]    Carothers also prepared a "Written Counseling" form to be presented to Lee. [McNeil decl. ¶ 6, Ex. B; Lee depo. p. 189, ¶ 6, Ex. B, lines 4-23, p. 190, lines 1-21; DX 31]. The written counseling was never presented to Lee, because shortly after Carothers orally counseled Lee, Lee offered her resignation, as discussed below. [McNeil decl. ¶ 6].

[3]    Lee's letter of resignation only stated that she decided to leave Compass and her last date of employment. [Lee depo. p. 95, lines 1-8].

referenced above, and her denial of the Financial Sales Representative position, as discussed below. [Lee depo. p. 85, lines 20-23, p. 86, lines 1-23, p. 87, lines 1-3, p. 189 lines 4-23, p. 190, lines 1-21]. The District Services Operations Manager and a human resources representative asked Lee not to resign. Lee decided to rescind her resignation and stay employed with Compass. McNeil and Carothers agreed to allow Lee to rescind her resignation. [Lee depo. p. 95, lines 9-17, p. 97, lines 9-18, p. 100, lines 19-23, p. 101, lines 1-9; McNeil decl. ¶ 7; George decl. ¶ 5].

**Training Provided to Lee Regarding Check Cashing Procedures**

During the initial days of her employment as a Compass Teller, Lee was assigned to watch and be trained by a Head Teller. The Head Teller showed Lee the various teller procedures to be followed, including the check-cashing process and the verification of endorsements and signatures on checks. [McNeil decl. ¶ 8; Lee depo. p. 23, lines 9-23, p. 24, lines 1-23].

On June 4, 2001, Lee signed Compass' "Teller Performance Expectations," which states in part as follows:

> Tellers are expected to adhere to deposit acceptance and check cashing policies in accordance with guidelines assigned to the individual teller. Responsibilities include, but are not limited to, a review of deposited items, **the checking of endorsements**, **signature verification** and balance availability.

[Lee depo. p. 25, lines 14-23, p. 26, lines 1-23, p. 27, lines 1-4; DX 4 (emphasis supplied)].

On April 13, 2004, Lee again received and signed Compass' "Teller Performance Expectations," which reminded Tellers to adhere to check cashing procedures, including but not limited to reviewing check endorsements and verifying the accuracy of signatures on checks. [Lee depo. p. 102, lines 18-23, p. 103, lines 1-14; DX 18].

**Delegated Authority**

On November 28, 2001, Carothers provided Lee with the amount of her delegated authority for cashing checks, which is the limit Lee is allowed to cash checks without obtaining managerial approval.  Lee's delegated authority was $1,000 for two-party personal checks.[4]  [Lee depo. p. 30, lines 12-23, p. 31, lines 1-4; DX 6].

**"T" Notation**

In September 2003, Compass requested all Tellers to provide a "T" notation on each check being cashed.  A "T" notation requires Tellers to put certain information into four quadrants of a "T" or a cross.  The top left quadrant contains a notation that Compass' system has been checked for messages (*e.g.*, stop payments) and the open date of the account.  In the top right quadrant, the Teller must note information regarding the individual's ID (*e.g.*, driver's license).  The bottom left quadrant should contain a check mark indicating that the current balance of the account, on which the check is being drawn, has been reviewed.  Also, the left quadrant should contain the initials of who is approving the transaction, assuming the transaction is above the Teller's delegated authority.  The bottom right quadrant requires the Teller to note if a "hold" is placed on the check.  [McNeil decl. ¶ 12; George decl. ¶ 3].  The "T" notation requirement was well-known by the Tellers and emphasized through meetings and training. [McNeil decl. ¶ 12; George decl. ¶ 3].

**Training Provided by District Services Operations Manager**

On October 12, 2004, the District Services Operations Manager ("DSOM") provided the Tellers assigned to the Dothan Main branch refresher training regarding the

---

[4] An example of a two-party personal check is a check written by one individual payable to another individual, who then presents the check for cashing to Compass.  [McNeil decl. ¶ 9].

check-cashing procedures.  [McNeil decl. ¶ 13; George decl. ¶ 4; Lee depo. p. 103, lines 15-23, p. 104, lines 1-15].  In addition to providing oral instructions relating to check-cashing procedures, the DSOM provided the Tellers with written materials, including the following:  (1) a Mini-Proof Checklist that in part reminded Tellers to complete the "T" notation on checks, review their delegated authority limits and to verify the proper endorsements on checks; (2) a document entitled, "7 Teller Strategic Questions," which in part reminds Tellers to check their authority and endorsements; (3) a sample check which describes the "T" notation that should be completed on checks and the information that is to be written within the "T"; and (4) a reminder regarding customer impersonation scams.  [George decl. ¶ 4; Lee depo. p. 109, lines 4-23, p. 110, lines 1-23, p. 111, lines 1-22; DX 19].

The DSOM further informed the Tellers of a recent check-cashing scheme that had occurred at other Compass branches involving individuals impersonating Compass customers and presenting fraudulent checks for cashing.  [George decl. ¶ 4; Lee depo. p. 111, line 23, p. 112, lines 1-22].  Moreover, the DSOM informed Tellers to be extra careful during the holiday season due to the potential increase in fraudulent activities.  [Lee depo. p. 104, lines 7-12].

**Lee's Failure to Follow Check-Cashing Procedures Resulting in Loss to Compass**

On December 30, 2004, Carothers informed Lee that Lee had cashed two fraudulent checks, one dated September 25, 2004 and the other dated November 18, 2004.  The checks resulted in a total loss to Compass of $3,000.  [Lee depo. p. 113, lines 12-23, p. 114, lines 1-23, p. 115, lines 1-23, p. 116, lines 1-4; DX 20].  Someone who impersonated Compass account holders presented checks drawn on other banks for cashing.  [McNeil decl. ¶ 14].  Lee did not write the "T" notation on either of the

fraudulent checks, as clearly required by the training she had received.  As noted above, the "T" notation would have included information regarding the alleged customer's account and required Lee to verify the individual's identification.  [Lee depo. p. 121, lines 13-16].  Because Lee did not write the "T" notation on the check, the Southeast District was charged with the loss of $3,000. [George decl. ¶ 6].

Lee testified in her deposition as to the reason she did not write the "T" notation on the checks, as follows:

Q:      …[T]here's no T-bar on the checks; correct?

A:      Right.

Q:      And why is that?

A:      It was very busy day, you know, short-handed.  You know, she is customer.  I just forgot.

[Lee depo. p. 121, lines 13-20].

In addition, one of the fraudulent checks contained a false endorsement of Cheryl Alleman's name, an actual Compass customer.  Compass has a system that allows Tellers to review customers' signatures as well as their driver's licenses.  [McNeil decl. ¶ 14]. The individual who presented one of the fraudulent checks and impersonated Ms. Alleman was African-American.  [Lee depo. p. 126, lines 22-23, p. 127, line 1].  If Lee had verified the alleged endorsement of Alleman on the system, she would have seen Ms. Alleman's driver's license revealing that Ms. Alleman is in fact white, and Lee would have discovered that was not Ms. Alleman's signature on the check.  [McNeil decl. ¶ 14].

**Lee's Termination from Employment**

Through a memorandum dated January 28, 2005 from McNeil and Carothers, Lee was informed of her termination from employment. The memorandum states in part as follows:

> On September 30, 2004 you cashed a non-Compass check in the amount of $1,500.00 for customer Julie M. Brannon. On November 22, 2004 you cashed a non-Compass check in the amount of $1,500.00 for Cheryl Alleman. These cheeks were drawn on accounts in Florida. You failed to obtain customer identification, thumb print, signature was not verified on system and no "T" bar with required information or customer account number referenced on the check. In addition, you did not receive supervisor's approval and the check was over your delegated authority.
>
> The check was part of several fraudulent checks written against Mrs. Brannon's and Mrs. Alleman's account[s]. Due to the fact policy was not followed when checks were presented for payment, Compass Bank and our office has (sic) taken the loss of $3,000.00.
>
> In accordance with the Teller Standards you signed on 4/13/04 and delegated authority signed on 11/28/01, the failure to adhere to your checking cashing limit and bank policy and procedures requires us to terminate our employment relationship with you.

[Lee depo. p. 127, line 23, p. 128, lines 1-7; DX 21].

**Prior Terminations of Other Tellers in the Same District for Same Reason**

Prior to Lee's termination from employment, Compass terminated the employment of two other Tellers in the same District[5] as a result of their failure to follow check cashing procedures that resulted in a loss arising out of the same check-fraud scheme as occurred when Lee cashed two fraudulent checks. [George decl. ¶ 7]. On December 27, 2004, a white female Teller at Compass' Eufaula branch was discharged for failing to follow check-cashing procedures while cashing one check on September 29,

---

[5] Compass' branches or banking centers are organized into Districts. All three Tellers who were terminated for failing to follow cash-check procedures worked in banking centers within Compass' Alabama Southeast District reporting to the same DSOM. [McNeil decl ¶ 14].

2004 in the amount of $1,500.  [George decl. ¶ 7, Ex. A].  Her termination memorandum

states in part as follows:

> On September 29, 2004 you cashed a non-Compass check in the amount of $1,500 for customer Julie M. Brannon.  This check was drawn on a account in Miami FL.  You failed to obtain customer identification, thumb print, signature was not verified on system and no "T" bar with required information or customers account number referenced on check or in teller machine.  In addition, you did not receive supervisor's approval and the check was over your delegated authority.
>
> This check was part of several fraudulent checks written against Mrs. Brannon's account. Due to the fact policy was not followed when check was presented for payment, Compass Bank and our office has (sic) taken the loss of $1,500.
>
> In accordance with the Teller Standards, which you signed on 09/25/01 and delegated authority signed on 03/19/02 the failure to adhere to your checking cashing limit and bank policy and procedures requires us to terminate our employment relationship with you.

[George decl. ¶ 7, Ex. A].

On January 21, 2005, a white male Teller at Compass' Dothan Wiregrass branch

was discharged for failing to follow check-cashing procedures in cashing one check on

January 3, 2005 in the amount of $1,800.  [George decl. ¶ 8, Ex. B].  His termination

memorandum states in part as follows:

> On January 3, 2005 you cased a non-Compass check in the amount of $1,800 for customer Valentina Butler.  This check was drawn on an account in Miami FL.  You failed to obtain customer thumb print and the signature was not verified on the system.  In addition, you did not receive supervisor's approval and the check was over your delegated authority.
>
> This check was part of several fraudulent checks written against Mrs. Butler's account.  Due to the fact policy was not followed when the check was presented for payment, Compass Bank and our office has (sic) taken the loss of $1,800.
>
> In accordance with the Teller Standards and the delegated authority signed by you on 10/12/2004 the failure to adhere to your checking cashing limit and bank policy and procedures requires us to terminate our employment relationship with you.

[George decl. ¶ 8, Ex. B].

## Financial Sales Representative Positions

Lee alleges that she was discriminatorily denied three Financial Sales Representative ("FSR") positions that were filled by: (1) Jennifer Little in September 2002; (2) Leslie Weber in November 2002; and (3) Holly Brownell in January 2003. [McNeil decl. ¶ 16; Lee depo. p. 40, lines 11-19, p. 41, lines 12-23, p. 42, lines 1-19, p. 58, lines 16-23, p. 59, lines 1-9, p. 66, lines 3-23, p. 67, lines 1-4; DX 1, 8, 12]. Regina McNeil selected Jennifer Little and Leslie Weber for the FSR positions, because they both held the FSR position at another Compass branch at the times they applied for the FSR positions at the Dothan Main branch. [McNeil decl. ¶ 16]. Accordingly, Little and Weber both had previous FSR experience that Lee lacked. [McNeil decl. ¶ 16; Lee depo. p. 43, lines 13-17, (never held FSR position), p. 46, lines 8-11 (Lee informed that someone with more experience was transferring to branch).]. McNeil selected Holly Brownell for the FSR position based on her customer service experience and her prior experience in processing loan documentation. Prior to receiving the FSR position, Brownell held a Financial Services Loan Processor position and was highly recommended by her supervisor at that time. [McNeil decl. ¶ 16]. Therefore, McNeil selected Brownell for the FSR position. [McNeil decl. ¶ 16].

## Filing of EEOC Charge and Complaint

Lee filed her EEOC charge on February 9, 2005. [EEOC charge of discrimination file]. Lee filed her Complaint in this lawsuit on August 2, 2005.

## Argument

### I.    Lee's Termination Claim is Without Merit.

Lee alleges that her employment was terminated because she is Asian and a minority. Such claim cannot survive summary judgment for the following reasons.

#### A.    Lee Cannot Establish a *Prima Facie* Case of Discrimination.

There are four elements to establishing a *prima facie* case of a discriminatory termination.[6] The first three elements are as follows: (1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the position from which she was terminated; and (3) the plaintiff was in fact terminated. A plaintiff may establish the fourth element of her *prima facie* case by either presenting evidence that she was replaced by a person outside the protected class, or that she was terminated while similarly situated white employees were retained. *See Weaver v. CASA Gallardo, Inc.*, 922 F.2d 1515, 1525 (11th Cir. 1991); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). Lee cannot meet the fourth element of her *prima facie* case, because there is no evidence that she was replaced by a non-minority, and there is no evidence that she was treated differently than similarly-situated white employees.

In this case, Lee equates her Asian status to African-American by alleging that Compass, and specifically McNeil and Carothers, treated her and African-Americans in a discriminatory manner. [Complaint ¶¶ 8-9]. However, McNeil and Carothers hired an African-American to replace Lee. [McNeil decl. ¶ 15]. Therefore, Lee cannot establish the fourth element of a *prima facie* case through evidence that a white person, a non-minority, replaced her.

---

[6] In order to survive summary judgment through circumstantial evidence, Lee must meet burdens of production established in *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973), which includes the establishment of a *prima facie* case.

Lee also cannot establish that similarly situated white employees were treated different from her.[7]  In her Complaint and in her EEOC charge, Lee alleges that she was discharged for an error that is common and that whites who commit this error are not terminated.  [EEOC file-charge of discrimination].  During her deposition, Lee classified that the "error" is the cashing of a check without doing the "T" notation and that the white employee she references is Tiffany Davis.  [Lee depo. p. 151, lines 1-15].  Lee alleges that after her termination from employment she learned from discussions with others that Tiffany Davis allegedly made an error in cashing a check but was not discharged.  [Lee depo. p. 152, lines 8-23, p. 153, lines 6-22].  Lee's reliance on what other employees told her is inadmissible hearsay.[8]  Even if the statement was admissible, it is nothing more than a conclusion—not evidence of disparate treatment.  *See Williams v. AIDT*, 146 F. Supp. 2d 1214, 1225 (M.D. Ala. 2001) (Employee must offer more than a mere verification of his own conclusory allegations via the inadmissible hearsay contained in his own deposition testimony to survive summary judgment.); *Owens v.*

---

[7] In order for a white employee to be a proper comparator or similarly-situated, the white employee's conduct, must be "nearly identical" both in terms of "quantity and quality." *See Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999) ("the quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."); *Nix v. Radio/Rahall Communication*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("In order for two employees to be similarly situated in such a way that their disparate treatment creates an inference of discrimination, the circumstances of their employment must be 'nearly identical'"); *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.) (to establish that another employee is a proper comparator, a plaintiff must show that she and the employee are similarly situated in all respects), *modified on other grounds*, 151 F.3d 1321 (11th Cir. 1998).

[8] *See* F.R.E. 801(c), 802; *Pritchard v. The Southern Company Services*, 92 F.3d 1130, 1134-1135 (11th Cir. 1996) (refusing to consider plaintiff's own deposition testimony recounting conversations she had with co-workers about the alleged comparator because it was inadmissible hearsay); *See also Macuba v. Deboer*, 193 F.3d 1316, 1322-1325 (11th Cir. 1999) (hearsay cannot be considered on a motion for summary judgment unless it can be reduced to admissible form at trial).

*Commercial Testing & Eng'r Co., Inc.*, 1998 U.S. Dist. LEXIS 18147 *36 (S.D. Ala. Oct. 26, 1998) (Summary judgment granted because plaintiff's deposition testimony clearly constitutes inadmissible hearsay and speculation.); s*ee also Couto v. Martin Bd. of County Comm'rs,* 47 F.3d 1068, 103-74 (11th Cir. 1995) (conclusory allegations are insufficient to raise an inference of pretext); *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1331 (M.D. Ala. 1998) (If a non-movant's response fails to address an issue and "consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.").

Further, as established by clear, admissible evidence, Tiffany Davis never caused a loss to Compass as a result of failing to write a "T" notation on a fraudulent check. [McNeil decl. ¶ 17]. Tiffany Davis cashed a fraudulent check, but she included the "T" notation. Because she followed check cashing procedures, her District was not charged with the loss. [George decl. ¶ 9]. Accordingly, Lee cannot establish that other similarly-situated white employees were treated differently, and therefore cannot establish a *prima facie* case of race discrimination with respect to her termination from employment. *See Turlington v. Atlanta Gas Light* Co., 135 F.3d 1428, 1432 (11th Cir. 1998) ("[s]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case").

**B.    Compass has Articulated a Legitimate, Non-Discriminatory Reason for Lee's Discharge.**

Even assuming that Lee could establish a *prima facie* case, her termination claim cannot survive summary judgment.[9]    Lee's employment was terminated because she

---

[9] The establishment of a *prima facie* case does not entitle a plaintiff to survive summary judgment where the defendant has offered a legitimate, non-discriminatory reason for the challenged action. *See Holifield. v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997) ("But …

failed to follow check cashing procedures that resulted in a loss to Compass and her District.  [Lee depo. p. 121, lines 13-20, p. 127, lines 23, p. 128, lines 1-7; DX 21].  Because Compass has articulated a legitimate, non-discriminatory reason for Lee's discharge, she must establish that Compass' reason is a pretext for unlawful discrimination.  *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1081 (11th Circ. 2005).  As established below, this she cannot do.

## C.    There is No Evidence that Compass' Reason for Terminating Lee's Employment is a Pretext for Asian Discrimination.

There is no evidence that Lee's failure to follow check-cashing procedures was not the real reason for her discharge.  As stated above, two white employees during the same time period were discharged for the same conduct, although they each only cashed one fraudulent check without following the correct procedures.  [George decl. ¶¶ 7-8, Exs. A and B].

Further, Lee testified during her deposition that she knew of others who have been discharged for similar conduct, as follows:

> Q:    Do you know of any Compass Bank employees who have been fired for a loss after not doing a "T" bar or verifying signatures, other than yourself?
>
> A:    Oh, it's happened before.  This is not the first time.
>
> Q:    And who –
>
> A:    It's happened all the time.

[Lee depo. p. 157, lines 15-23].

---

even assuming that Holifield has established a prima facie case, the defendant is still entitled to summary judgment."); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987); *Pace v. Southern Rg. System*, 701 F.2d 1383, 1389 (11th Cir. 1983).

Therefore, there is no evidence of pretext. *See Earley v. Champion International Corp.*, 907 F.2d 1077, 1084 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must … present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice…. Most important, the plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence … Plaintiffs must do more than allege pretext to make out a triable issue of fact.").

Moreover, there also is no evidence that McNeil and Carothers harbored some animosity against Lee because she is Asian.[10] *See Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir. 1995) ("[G]iven the ease of pleading cases of discrimination, plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent."). In fact, because McNeil and Carothers both hired and discharged Lee, there is a permissible inference that Lee's discharge was not based on her race. Lee was Asian at the time she was hired and discharged. In other words, if McNeil and Carothers did not want an Asian Teller, they would not have hired her. *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (same actor evidence may give rise to a permissible inference that no discriminatory animus motivated challenged actions); *Grady v. Affiliated Cent., Inc.*, 130

---

[10] In *Chapman v. AI Transport*, 229 F.3d 1012, 1012 n. 11 (11th Cir. 2000), the Eleventh Circuit stated that pursuant to the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc*, 530 U.S. 133 (2000), even if a plaintiff presents sufficient evidence that the employer's reasons are pretextual, the plaintiff still may not be entitled to take his case to the jury. *Id.* ("For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred....").

F.3d 553, 560 (2nd Cir. 1997) (when the same actor hires a person already within the protected class, and then later fires that same person, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire"). Further, Compass, including McNeil and Carothers, accepted Lee's withdrawal of her resignation approximately eight months prior to her termination. [McNeil decl. ¶ 7]. Had Carothers and McNeil harbored some discriminatory animus towards her, this would not have happened. Accordingly, Lee's termination claim is due to be summarily dismissed.

## II.    Lee's Promotion Claims Cannot Survive Summary Judgment.

Lee's promotion claims relating to the denial of the Financial Sales Representative ("FSR") position on three occasions cannot survive summary judgment, because they are barred by the applicable statute of limitations and are substantively without merit.

### A.    Lee's Promotion Claims are Time-Barred.

Lee alleges that she was discriminatorily denied three Financial Sales Representative ("FSR") positions that were filled by these individuals on these dates: (1) Jennifer Little in September 2002; (2) Leslie Weber in November 2002; and (3) Holly Brownell in January 2003. [McNeil decl. ¶ 16; Lee depo. p. 40, lines 11-19, p. 41, lines 12-23, p. 42, lines 1-19, p. 58, lines 16-23, p. 59, lines 1-9, p. 66, lines 3-23, p. 67, lines 1-4; DX 1, 8, 12]. Lee's claims with respect to the FSR position cannot be maintained because they are time-barred by the applicable statute of limitation periods for Title VII and Section 1981 claims.

1.    **Section 1981 Promotion Claims are Barred by the Two-Year Statute of Limitation.**

Claims based on non-promotion are subject to a two-year statute of limitations under 42 U.S.C. [§] 1981.  *See Hithon v. Tyson Foods, Inc.*, 2005 WL 1820041 at *3 (11th Cir. Aug. 3, 2005) ("Hinthon's failure to promote claims were cognizable before Congress's 1991 expansion of [§] 1981 and thus remain subject to the Alabama two-year statute of limitations ….").  Lee filed her Complaint on August 2, 2005 – more than two years after the promotion decisions at issue.  Accordingly, Lee's § 1981 claims relating to the FSR selection decisions are time-barred.

2.    **Title VII Promotion Claims are Barred by the 180-Day Charge Filing Limitation.**

Similarly, Lee's promotion claims under Title VII are time-barred.   Under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the "alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e). s*ee also United AirLines v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis of a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed."); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428 (11th Cir. 1998); *Ross v. Buckeye Cellulose Corp*., 980 F. 2d 648, 662 (11th Cir. 1993), *cert. denied*, 115 S. Ct. 69 (1994) (failure to file a charge of discrimination within 180 days of alleged discriminatory conduct requires the court to dismiss the subsequent suit as untimely);  *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992); *Welty v. S.F. & G., Inc.,* 605 F. Supp. 1548 (N.D. Ala. 1985) (the defendant's motion for summary judgment was granted where the plaintiff's Title VII claim was untimely). Lee filed her EEOC charge on February 9, 2005 – more than 180 days after the relevant FSR

positions were filled.  Therefore, Lee's FSR promotion claims are time-barred under both discrimination statutes, and are due to be dismissed without more.

**B.      Lee's Promotion Claims are Otherwise Without Merit.**

Even if Lee's promotion claims relating to the FSR position were not time-barred (which they clearly are), they cannot survive summary judgment, because Lee cannot establish a *prima facie* case with respect to one of the positions, and cannot establish that Compass' legitimate, non-discriminatory reasons are a pretext for unlawful discrimination with respect to all three positions.

**1.      Lee Cannot Establish a *Prima Facie* Case With Respect to the FSR position filled by Leslie Weber.**

In order to establish a *prima facie* case of race discrimination, Lee must present evidence that:  (1) she is a member of a protected class; (2) she was qualified *and applied* for the promotion sought; (3) that despite her qualifications, she was rejected; and (4) that other employees with equal or less qualifications who are not members of the same protected class as the plaintiff were promoted.  *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000).  Lee did not apply for the FSR position filled by Leslie Weber.[11]  [McNeil decl. ¶ 16].  Therefore, she cannot establish a *prima facie* case with respect to this promotion decision.

---

[11] Although in her deposition Lee testified that she in fact applied for the FSR position filled by Leslie Weber, the relevant file containing a list of all the applicants clearly establishes that she did not apply for the position.  [McNeil decl. ¶ 16, Ex. D].  Lee has not produced her application or bid for the position.  Lee's self-serving conclusory allegation that she applied is insufficient to overcome the undisputed documentary evidence that she did not apply for the position.

## 2.    Compass Has Established Legitimate, Non-Discriminatory Reasons for its Selection Decisions.

Even assuming Lee could establish a *prima facie* case of discrimination with respect to the three FSR positions, her promotion claims are due to be dismissed because Compass' legitimate reasons for selecting other individuals are beyond question.

### a.    Jennifer Little Position

Jennifer Little was selected for the position because at the time of her bid for the position she held a FSR position in Eufaula and was already successfully performing the FSR position. [McNeil decl. ¶ 16]. Unlike Little, Lee did not have prior FSR experience. [McNeil decl. ¶ 16; Lee depo. p. 43, lines 13-17].

### b.    Leslie Weber Position

As stated above, Lee did not apply for the FSR position filled by Leslie Weber. However, even assuming the Court were to conclude for purposes of summary judgment that Lee applied for such position, Weber was selected because, like Little, she held a FSR position at another branch at the time she applied for the FSR position in the Dothan Main branch. Accordingly, Weber had prior FSR experience that Lee lacked. [McNeil decl. ¶ 16].

### c.    Holly Brownell Position

Holly Brownell was selected for the FSR position based on her customer service experience and her prior experience in processing loan documentation. Prior to receiving the FSR position, Brownell held a Financial Services Loan Processor position. [McNeil decl. ¶ 16]. During her interview for the FSR position, Lee did not demonstrate the ability to sell or an understanding of the FSR position. [McNeil decl. ¶ 16].

### 3.     <u>Lee Cannot Establish Pretext or Asian Discrimination.</u>

Because Compass has established legitimate, non-discriminatory reasons for its selection decisions with respect to the FSR position, Lee must present evidence that Compass' reasons are a pretext for discrimination. This Lee cannot do. There is no evidence that Compass' articulated reasons for selecting others to the FSR positions are not the true reasons for the decisions that were made. Moreover, there is no evidence that her race, Asian, was the reason she was not selected for the positions. Therefore, Lee's promotion claims are due to be summarily dismissed.

### III.     <u>Lee's Discriminatory Discipline Claim Fares No Better.</u>

In her Complaint, Lee alleges that her supervisor "disciplined her in a manner not used to discipline white employees and which was humiliating and insulting." [Complaint ¶ 7]. Lee testified during her deposition that Carothers first spoke to Lee about her errors relating to the fraudulent checks in front of other Tellers and a customer. [Lee depo. p. 116, lines 8-14]. In a letter Lee wrote to a Compass human resources representative, Lee also complained that she believed that her errors should have been discussed in a more private setting. [Lee depo. p. 137, lines 2-10; DX 22]. In addition to the manner in which Lee's errors were initially brought to her attention, Lee testified during her deposition that her allegation of discriminatory discipline related to the fact that she was disciplined for errors while Tiffany Davis, who is reference above, was not disciplined. [Lee depo. p. 158, lines 11-23, p. 159, lines 1-10].

Regardless of whether Lee's discriminatory discipline claim relates to the manner in which Carothers addressed Lee's errors with her, her discharge (which is addressed above), or Lee's various attendance warnings and counselings she received, Lee's discriminatory discipline claim cannot be maintained.

### A.    Lee Cannot Show an Adverse Employment Action.

With respect to manner in which she was addressed and the attendance warnings and counselings, Lee cannot show that her discipline resulted in an adverse employment action sufficient to constitute a claim.   The Eleventh Circuit has made it clear that "not every action that makes an employee unhappy is an actionable adverse employment action."  *See Doe v. Dekalb County School District*, 145 F.3d 1441, 1450 (11th Cir. 1998).   "Otherwise, minor or even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would be the basis of a discrimination suit."  S*ee Smart v. Ball State*, 89 F.3d 437, 441 (7th Cir. 1996); *see also Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee' compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.");  *Davis v. Town of Lake Park,* 245 F.3d 1232, 1239-40 (11th Cir. 2001) (holding negative job performance evaluations that plaintiff believed may potentially interfere with future promotions are not adverse employment actions).

In this case, none of the written warnings or counseling sessions Lee received resulted in any tangible employment action, such as a decrease in pay or a demotion. [McNeil decl. ¶ 3].   Accordingly, they are not adverse employment actions sufficient to support a discrimination claim.

### B.    There is No Evidence that Similarly-Situated White Employees Were Treated Differently.

Lee cannot establish that a similarly-situated white employee was treated more favorably with respect to discipline, which is a necessary element of a *prima facie* case of

race discrimination.  *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1336 (11th Cir. 2000).  While Lee may speculate that others had attendance issues, she has no personal knowledge of their attendance records or whether they have been counseled or received warnings for attendance. [McNeil decl. ¶ 18, Ex. E].

### C.      There is No Evidence of Pretext or Asian Discrimination.

Compass has articulated legitimate, non-discriminatory reasons for all its actions, including its warnings relating to Lee's poor attendance and informal counseling of Lee with respect to taking a personal call while waiting on customers. [McNeil decl. ¶ 6]. There is no evidence that these reasons are a pretext for race discrimination or that Lee's race was the real reason she was counseled and received warnings.  Thus, her discipline claim fails as a matter of law.

### Conclusion

There is no evidence that Lee was discriminated against because she is Asian.  In fact, all the evidence indicates that McNeil and Carothers did not discriminate against Lee but treated her the same as two other Tellers who cashed fraudulent checks without following the basic check cashing procedures.    Moreover, Lee's discriminatory promotion and discipline claims are without any factual or evidentiary support.

Accordingly, Compass' motion for summary judgment is due to be granted.


/s/ Douglas B. Kauffman
Attorney for Defendant

**OF COUNSEL**:
Douglas B. Kauffman
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 26th of April, 2006:

Malcolm R. Newman
P. O. Box 6137
Dothan, Alabama 36302

/s/ Douglas B. Kauffman
Of Counsel